24 F.3d 1052
 AFRICAN-AMERICAN CITIZENS FOR CHANGE, Plaintiff-Appellant,
v.
ST. LOUIS BOARD OF POLICE COMMISSIONERS; and James F.
Conway; Charles Mischeaux; Matthew Padberg; Anne Marie
Clarke; Freeman Bosley, Jr., as members of the Board of
Police Commissioners for the City of St. Louis, Missouri,
Defendants-Appellees.
 No. 93-3438.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 14, 1994.
Decided May 23, 1994.
 
 Eric Vickers, St. Louis, MO, argued, for appellant.
 Adrian Sulser, St. Louis, MO, argued (Henry Menghini, on the brief), for appellee.
 Before LOKEN, Circuit Judge, ROSS, Senior Circuit Judge, and JOHN R. GIBSON, Senior Circuit Judge.
 LOKEN, Circuit Judge.
 
 
 1
 Chapter 84 of the Revised Statutes of Missouri grants control over the St. Louis Police Department to the St. Louis Board of Police Commissioners. The five-member Board consists of the Mayor of St. Louis and four members appointed by the Governor with the advice and consent of the state Senate. See Mo.Rev.Stat. Secs. 84.020; 84.030. This statutory structure has existed since 1861. See State v. Mason, 153 Mo. 23, 54 S.W. 524, 525 (1899).
 
 
 2
 African-American Citizens for Change ("AACC"), a St. Louis non-profit organization, commenced this action to have Chapter 84 declared invalid under Section 2 of the Voting Rights Act, 42 U.S.C. Sec. 1973, which provides in relevant part:
 
 
 3
 (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color....
 
 
 4
 (b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.
 
 
 5
 AACC alleges that African-Americans comprise 42.7% of the voting-age population of St. Louis, but only 9.7% of the voting-age population of the State. Therefore, by granting controlling appointive power to officials who are elected statewide, Chapter 84 unlawfully dilutes the power of St. Louis African-Americans to influence and control local police department issues that are of vital interest to them.
 
 
 6
 The district court[1] granted defendants' motion to dismiss, concluding that the Voting Rights Act, as amended, does not apply to Missouri's method of appointing members to the St. Louis Board of Police Commissioners; that AACC lacks standing to sue under the Voting Rights Act; that AACC "has failed to allege that the appointive system for Police Board members has produced discriminatory results," particularly since two of the four appointed members of the present Board are African-Americans; and that the Board and its members are not proper parties defendant. African-American Citizens for Change v. Robbins, 825 F.Supp. 885 (E.D.Mo.1993). AACC appeals. We affirm.
 
 
 7
 Section 2(a) of the Voting Rights Act "covers every application of a qualification, standard, practice, or procedure that results in a denial or abridgement of 'the right' to vote." Chisom v. Roemer, 501 U.S. 380, 397, 111 S.Ct. 2354, 2365, 115 L.Ed.2d 348 (1991) (emphasis in original). In Chisom, while holding that Sec. 2 applies to judicial elections, the Court noted:
 
 
 8
 Louisiana could, of course, exclude its judiciary from the coverage of the Voting Rights Act by changing to a system in which judges are appointed....
 
 
 9
 501 U.S. at 401, 111 S.Ct. at 2367. See also Thornburg v. Gingles, 478 U.S. 30, 47, 106 S.Ct. 2752, 2764, 92 L.Ed.2d 25 (1986) ("The essence of a Sec. 2 claim is ... inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives."). To our knowledge, every court to consider the question has at least tentatively concluded that Sec. 2 is limited to elected officials. See Irby v. Virginia State Bd. of Elections, 889 F.2d 1352, 1357 (4th Cir.1989) ("it appears more probable than not that Section 2 is not applicable to appointive offices"), cert. denied, 496 U.S. 906, 110 S.Ct. 2589, 110 L.Ed.2d 270 (1990); Searcy v. Williams, 656 F.2d 1003, 1010 (5th Cir.1981) (appointive school board system), aff'd, 455 U.S. 984, 102 S.Ct. 1605, 71 L.Ed.2d 844 (1982); Bradley v. Indiana State Election Bd., 797 F.Supp. 694, 698 (S.D.Ind.1992) (Sec. 2 applies to judicial retention elections but not to the initial appointment of those judges); Williams v. State Bd. of Elections, 696 F.Supp. 1563, 1568-69 (N.D.Ill.1988) (Associate Circuit Court judges appointed by elected Circuit Court judges). Cf. Dillard v. Crenshaw County, 831 F.2d 246, 251 (11th Cir.1987) ("The language [of Sec. 2] is only and uncompromisingly premised on the fact of nomination or election").
 
 
 10
 AACC does not allege that the manner in which Missouri elects its Governor, or the state Senators who confirm the Governor's appointments, violates Sec. 2. AACC challenges only the statutory procedure under which the Governor appoints St. Louis Police Commissioners. It is no doubt true, at least in theory, that all St. Louis voters, including the City's African-American voters, have less influence over local police affairs because the State Legislature has given the Governor of Missouri, rather than the Mayor of St. Louis, the power to appoint four of the five members of the Board of Police Commissioners. But Section 2 is expressly limited to "the political processes leading to nomination or election" of state and local officials. The Supreme Court recognized the limiting effect of that plain language in Chisom. Extending Sec. 2 to cover the St. Louis Board of Police Commissioners and other appointed state and local officials would "work an unconstrained expansion" of that statute. Presley v. Etowah County Comm'n, --- U.S. ----, ----, 112 S.Ct. 820, 829, 117 L.Ed.2d 51 (1992). Only Congress may authorize such an expansion, and we conclude that it has not done so.
 
 
 11
 The judgment of the district court is affirmed because Sec. 2 of the Voting Rights Act does not apply to appointed officials. We do not consider the other grounds relied upon by the district court.
 
 
 
 [1]
 The HONORABLE STEPHEN N. LIMBAUGH, United States District Judge for the Eastern District of Missouri